1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  LUPE ELIZABETH ANDERSON, | Case No.  1:21-cv-00710-JLT-HBK |
| 12         Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR |
| 13     v. | SUMMARY JUDGMENT, DENY DEFENDANT'S CROSS-MOTION FOR |
| 14  MARTIN O'MALLEY, COMMISSIONER OF SOCIAL | SUMMARY JUDGMENT, AND REMAND CASE TO THE COMMISSIONER OF |
| 15  SECURITY,[1] | SOCIAL SECURITY[2] |
| 16         Defendant. | (Doc. Nos.  20, 23) |
| 17 | FOURTEEN-DAY OBJECTION DEADLINE |

18

19        Lupe Elizabeth Anderson ("Plaintiff"), seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21   supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

22   currently before the undersigned on the parties' briefs, which were submitted without oral

23   argument.  (Doc. Nos. 20, 23).  For the reasons stated, the undersigned RECOMMENDS granting

24   Plaintiff's motion for summary judgment, denying the Commissioner's construed cross-motion

25   for summary judgment, and remanding for further administrative proceedings.

26   _____

27   [1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).

28   [2]  This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(15) (E.D. Cal. 2022).

1

## I.        JURISDICTION

2        Plaintiff filed for supplemental security income on October 30, 2018, alleging a disability

3   onset date of November 11, 2016.  (AR 233-36).  At the hearing, she amended the alleged onset

4   date to October 30, 2018.  (AR 40).  Benefits were denied initially (AR 102-14, 140-45), and

5   upon reconsideration (AR 116-32, 149-54).  A telephonic hearing was conducted before an

6   Administrative Law Judge ("ALJ") on September 14, 2020.  (AR 30-62).  Plaintiff was

7   represented by counsel and testified at the hearing.  (*Id*.).  On October 29, 2020, the ALJ issued

8   an unfavorable decision (AR 13-29) and on March 2, 2021, the Appeals Council denied review.

9   (AR 1-6).  The matter is before the Court under 42 U.S.C. § 1383(c)(3).

10

## II.        BACKGROUND

11        The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

12   decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

13   summarized here.

14        Plaintiff was 49 years old at the time of the hearing.  (AR 41).  She completed twelfth

15   grade and was in special education classes.  (AR 45, 47-48).  Plaintiff testified that had been

16   living with her mom, but moved in with her sister a few days before the hearing.  (AR 42-43).

17   She has no relevant work history.  (AR 58).  Plaintiff testified that she was fired from her first

18   "job" because she could not follow instructions.  (AR 49).  She reported her mental health issues

19   are "the most problematic" of her conditions.  (AR 51).  She has difficulties with anger problems,

20   needs to have things repeated, needs assistance to fill out paperwork and get to her doctor's

21   appointments, and requires reminders to take medication.  (AR 51-53).  Plaintiff testified she has

22   thoughts of self-harm every two to three weeks, but has only made a physical attempt to hurt

23   herself on one occasion.  (AR 53-54).  She reported difficulty concentrating and pain in her back

24   and knee.  (AR 54-55).  Plaintiff testified she can stand for about 30 minutes before she has to sit,

25   cannot walk for more than 30 minutes at a time, can sit for 10 to 15 minutes before she has to lay

26   down, and can lift and carry two gallons of milk.  (AR 55).

27

## III.        STANDARD OF REVIEW

28        A district court's review of a final decision of the Commissioner of Social Security is

1    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

2    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

3    is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

4    evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

5    conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

6    equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

7    citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

8    consider the entire record as a whole rather than searching for supporting evidence in isolation.

9    *Id.*

10        In reviewing a denial of benefits, a district court may not substitute its judgment for that of

11   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

12   to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

13   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

14   harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

15   nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's

16   decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

17   U.S. 396, 409-10 (2009).

18                    **IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

19        A claimant must satisfy two conditions to be considered "disabled" within the meaning of

20   the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

21   activity by reason of any medically determinable physical or mental impairment which can be

22   expected to result in death or which has lasted or can be expected to last for a continuous period

23   of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

24   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

25   considering his age, education, and work experience, engage in any other kind of substantial

26   gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

27        The Commissioner has established a five-step sequential analysis to determine whether a

28   claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

1   Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

2   claimant is engaged in "substantial gainful activity," the Commissioner must find that the

3   claimant is not disabled.  20 C.F.R. § 416.920(b).

4          If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

5   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

6   C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

7   impairments which significantly limits [his or her] physical or mental ability to do basic work

8   activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

9   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

10  claimant is not disabled.  20 C.F.R. § 416.920(c).

11         At step three, the Commissioner compares the claimant's impairment to severe

12  impairments recognized by the Commissioner to be so severe as to preclude a person from

13  engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

14  severe or more severe than one of the enumerated impairments, the Commissioner must find the

15  claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

16         If the severity of the claimant's impairment does not meet or exceed the severity of the

17  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

18  functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

19  ability to perform physical and mental work activities on a sustained basis despite his or her

20  limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

21         At step four, the Commissioner considers whether, in view of the claimant's RFC, the

22  claimant is capable of performing work that he or she has performed in the past (past relevant

23  work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

24  work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

25  the claimant is incapable of performing such work, the analysis proceeds to step five.

26         At step five, the Commissioner considers whether, in view of the claimant's RFC, the

27  claimant is capable of performing other work in the national economy.  20 C.F.R. §

28  416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

4

1   factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

2   416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

3   find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

4   adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

5   therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

6           The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

7   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

8   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

9   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

10  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

11                          **V.      ALJ'S FINDINGS**

12          At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

13  since October 30, 2018, the application date.  (AR 18).  At step two, the ALJ found that Plaintiff

14  has the following severe impairments: bipolar disorder and lumbar spine degenerative disc

15  disease.  (AR 18).  At step three, the ALJ found that Plaintiff does not have an impairment or

16  combination of impairments that meets or medically equals the severity of a listed impairment.

17  (AR 19).  The ALJ then found that Plaintiff has the RFC to

18              perform medium work as defined in 20 CFR 416.967(c) with
              frequent postural activities; work uncomplicated enough it could be
19              learned in 30 days.  No hourly quotas or conveyer belt work.  No
              tandem tasks or teamwork where one production step is dependent
20              upon a prior step.  The claimant can manage occasional simple
              workplace changes and have occasional interaction with coworkers,
21              supervisors, and the public.

22  (AR 20).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 23).  At step

23  five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there

24  are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

25  including janitor, order filler, and laundry worker.  (AR 23-24).  On that basis, the ALJ concluded

26  that Plaintiff has not been under a disability, as defined in the Social Security Act, since October

27  30, 2018, the date the application was filed.  (AR 24).

28      ////

1

**VI.   ISSUES**

2      Plaintiff seeks judicial review of the Commissioner's final decision denying her

3  supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).

4  Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered

5  Plaintiff's subjective complaints, and therefore incorporated all of Plaintiff's work-related

6  limitations into the RFC consistent with the nature and intensity of Plaintiff's limitations.  (Doc.

7  No. 20 at 10-15).

8

**VII.   DISCUSSION**

9      A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."

10  20 C.F.R. § 404.1545(a); 20 C.F .R. § 416.945(a). The RFC assessment is an administrative

11  finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss v.*

12  *Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider

13  all limitations, severe and non-severe, that are credible and supported by substantial evidence in

14  the record.  (*Id.*) (RFC determination will be affirmed if supported by substantial evidence).

15  However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and

16  not identical to them.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

17  Ultimately, a claimant's RFC is a matter for the ALJ to determine.  *See Vertigan v. Halter*, 260

18  F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine

19  residual functional capacity.").

20      Plaintiff argues the ALJ erred in assessing her RFC largely because he failed to offer clear

21  and convincing reasons for rejecting her subjective complaints.[3]  (Doc. No. 20 at 10-15).  An ALJ

22  engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain

23  or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).   The ALJ first

24  must determine whether there is "objective medical evidence of an underlying impairment which

25

26  [3] Plaintiff additionally argues the RFC is unsupported by substantial evidence because (1) the ALJ found
the state agency reviewing opinions finding no severe mental health impairments were unpersuasive, and
27  (2) the ALJ failed to discuss third party statements regarding Plaintiff's limitations. (Doc. No. 20 at 10-
11).  In light of the need to remand for reconsideration of Plaintiff's mental health symptom claims and to
28  reassess the RFC, as discussed *supra*, the Court declines to consider these arguments.

1    could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal

2    quotation marks omitted).  "The claimant is not required to show that his impairment could

3    reasonably be expected to cause the severity of the symptom he has alleged; he need only show

4    that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d

5    586, 591 (9th Cir. 2009) (internal quotation marks omitted).

6         Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

7    ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

8    gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

9    1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

10   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

11   undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

12   1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

13   credibility determination with findings sufficiently specific to permit the court to conclude that

14   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

15   [evidence] standard is the most demanding required in Social Security cases." *Garrison v.*

16   *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

17   F.3d 920, 924 (9th Cir. 2002)).

18        Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

19   be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

20   the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

21   the medical evidence and other evidence in the record" for two reasons: (1) they are unsupported

22   by the objective evidence of record including improvement with medication, and (2) they are

23   inconsistent with Plaintiff's activities.  (AR 22).

24        First, the ALJ's entire finding regarding Plaintiff's activities consists of the following:

25   "That the claimant was able to move into a more stable housing environment as well as engage in

26   housecleaning indicates a greater function and insight; these records do not indicate a need for

27   functional limitations greater than those already set forth within the RFC; limiting the claimant to

28   work uncomplicated enough it could be learned in 30 days and precluding production-type jobs

7

1    accounts for any deficits in concentration, persistence, and pace." (*Id*.).  Plaintiff argues this was

2    not a clear and convincing reason to discount her mental health and cognitive symptom claims.

3    (Doc. No. 20 at 15).  The Court agrees.  The ALJ may consider a claimant's activities that

4    undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

5    However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in

6    concluding that daily activities are inconsistent with testimony about pain, because impairments

7    that would unquestionably preclude work and all the pressures of a workplace environment will

8    often be consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at

9    1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly

10   asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery

11   shopping, driving a car, or limited walking for exercise, does not in any way detract from her

12   [testimony] as to her overall disability.").

13        Here, in support of this finding, the ALJ first cites Plaintiff's report that she moved from

14   her mother's house to her sister's house, where "she is doing well." (AR 22, 43, 1058).  Plaintiff

15   argues the ALJ failed to consider consistent evidence throughout the record that Plaintiff required

16   frequent re-direction and assistance for ordinary activities of daily living such as bathing,

17   preparing meals, taking medication, and transportation.  (Doc. No. 20 at 15 (citing AR 413-14,

18   774, 924-25, 927, 930, 937, 940, 942 (noting mother has to prompt Plaintiff to do activities of

19   daily living), 948-49, 951. Moreover, while not considered by the ALJ in the decision, Plaintiff

20   testified at the hearing that she moved in with her sister only a few days prior to the hearing, and

21   she had a caregiver to help her manage and drive to appointments, fill out paperwork, handle

22   money, and help with cooking.  (AR 43-45).  The only other evidence cited by the ALJ in support

23   of this finding is Plaintiff's report to a mental health provider that she "cleans houses for

24   additional money when she is able," and her subsequent denial at the hearing that she "continued

25   to clean houses for money."  (AR 22, 56, 1062, 1080).  However, these same medical records

26   indicate she worked "variable" hours, and Plaintiff testified she cleaned for family members and

27   "they didn't let [her] do a lot."  (AR 56).  The ALJ cited no evidence suggesting that the sporadic

28   activities cited in the decision were performed by Plaintiff in a manner transferable to a work

8

1   setting, particularly with regard to Plaintiff's alleged difficulty with concentration and her need

2   for daily reminders, nor did the ALJ describe activities that contradict these reported symptom

3   claims.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Thus, to the extent the ALJ's found

4   Plaintiff's activities were inconsistent with her claimed limitations, this was not a clear and

5   convincing reason, supported by substantial evidence, to discount her symptom claims.

6          Second, the ALJ found Plaintiff's "subjective comments are not supported by the records

7   that routinely show normal cognition and memory with some impaired concentration at times and

8   occasional labile affect (although this had improved with proper medication dosing)."  (AR 22).

9   Medical evidence is a relevant factor in determining the severity of a claimant's pain and its

10  disabling effects.  *Rollins*, 261 F.3d at 857 (an ALJ may not discredit a claimant's pain testimony

11  and deny benefits solely because the degree of pain is not supported by objective medical

12  evidence).  Moreover, a favorable response to treatment can undermine a claimant's complaints of

13  debilitating pain or other severe limitations.  *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r*

14  *of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with

15  medication are not disabling for purposes of determining eligibility for benefits).  Here, as part of

16  his summary of the medical evidence, the ALJ generally noted mental status examination results

17  finding Plaintiff was personable, cooperative, collaborative, had good eye contact, had "intact

18  memory, attention, and concentration," and had euthymic mood and congruent affect; and the

19  ALJ noted medication adjustments in the record and a handful of Plaintiff's reports that she was

20  "doing better" and "doing well."  (AR 21-22 (citing AR 839-924, 962-71, 1058-1103)).  The ALJ

21  also acknowledged ongoing findings of pressured speech, anxious and irritable mood, labile

22  affect, impaired concentration, and one instance of "self-harm" resulting in a hospital admission.

23  (*Id*.).

24         As an initial matter, aside from a single reference that Plaintiff was sleeping better after

25  her medication was increased upon discharge from her hospitalization, the ALJ fails to identify

26  any specific and consistent improvement in Plaintiff's claims of impaired concentration and need

27  for reminders due to medication.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)

28  (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony

1   and the record; rather, "she simply stated her non-credibility conclusion and then summarized the

2   medical evidence supporting her RFC determination."); *Holohan v. Massanari*, 246 F.3d 1195,

3   1208 (9th Cir. 2001) (in considering Plaintiff's symptom claims, "the ALJ must specifically

4   identify the statements he or she finds not to be credible and must explain what evidence

5   undermines the testimony").  Rather, a review of the treatment records cited by the ALJ in

6   support of this finding indicates that mental status examinations routinely included findings of

7   labile affect, impaired concentration, pressured speech, tangential thought process, ruminative

8   thought content, anxious and irritable mood, psychomotor agitation, and impaired insight and

9   judgment, often with no reference to any changes, or lack thereof, in Plaintiff's medication

10   dosage.  (AR 21-22, 774-75, 851, 864, 858, 871, 878, 884, 890, 896, 903, 909, 915, 920, 924-25

11   (reporting better sleep after medication increase during hospitalization), 1064, 1075, 1082

12   (reporting "stable on medication" but mental status examination results include loud speech,

13   impaired concentration and attention, below average intelligence, and impaired insight and

14   judgment), 1096 (reporting recent increase in medication but mental status examination shows

15   rapid speech, impaired concentration, below average intelligence, and impaired insight and

16   judgment), 1097 (noting Plaintiff's need for a higher level of care)).  Moreover, regardless of

17   whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective

18   evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain

19   testimony and deny benefits *solely* because the degree of pain alleged is not supported by

20   objective medical evidence.  *Rollins*, 261 F.3d at 857 (emphasis added))); *Bunnell v. Sullivan*, 947

21   F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  As

22   discussed above, the additional reason given by the ALJ for discounting Plaintiff's symptom

23   claims was not supported by substantial evidence.  Thus, because lack of corroboration by the

24   objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the

25   ALJ's finding is inadequate.

26        The Court concludes that the ALJ did not provide clear and convincing reasons, supported

27   by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must

28   reconsider Plaintiff's symptom claims and reassess the RFC as necessary.

1

## VIII.   REMEDY

2      Plaintiff contends that the proper remedy in this case is a remand for further

3   administrative proceedings.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-

4   04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative

5   proceedings would serve a useful purpose).  The Court agrees.  Here, the ALJ improperly

6   considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and

7   resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.

8   "Where," as here, "there is conflicting evidence, and not all essential factual issues have been

9   resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  On

10   remand, the ALJ should reevaluate Plaintiff's symptom claims.  The ALJ should also conduct a

11   new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from

12   a vocational expert to include all the limitations credited by the ALJ.

13      Accordingly, it is **RECOMMENDED**:

14      1.      Plaintiff's Motion for Summary Judgment (Doc. No. 20) be GRANTED.

15      2.      Defendant's construed Cross Motion for Summary Judgment (Doc. No. 23) be

16              DENIED.

17      3.      Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the

18              Commissioner's decision and REMAND this case back to the Commissioner of

19              Social Security for further proceedings consistent with this Order.

20      4.      The district court direct the Clerk to enter judgment in favor of the Plaintiff,

21              terminate any pending motions/deadlines, and close this case.

22   ////

23   ////

24

## NOTICE TO PARTIES

25      These findings and recommendations will be submitted to the United States district judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

27   days after being served with these findings and recommendations, a party may file written

28   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

1  Findings and Recommendations." Parties are advised that failure to file objections within the

2  specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

3  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5  Dated:  ___January 5, 2024___

6  HELENA M. BARCH-KUCHTA
   UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28